[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15463

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 14, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00380-CR-T-30-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES ANDREW FOWLER,
a.k.a. Man,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 14, 2010)

Before EDMONDSON, BARKETT and ROTH,* Circuit Judges.

BARKETT, Circuit Judge:

_____

* Honorable Judge Jane R. Roth, United States Circuit Judge for the Third Circuit, sitting
by designation.

Charles Andrew Fowler appeals his conviction for murder with the intent to prevent a person from communicating information about a federal offense to a federal law enforcement officer or judge of the United States, in violation of 18 U.S.C. § 1512(a)(1)(C). Fowler argues that the government failed to present sufficient evidence to support his conviction. We affirm.

## I. BACKGROUND

In March 1998, Christopher Gamble, Jeffrey Bouyie, and Andre Paige robbed a Holiday Inn in Dundee, Florida. They then decided they would rob a NationsBank the next morning, and they recruited Fowler and Robert Winston to help them. Fowler and Winston had a stolen Oldsmobile that they used to surveille the bank and that they intended to use in the robbery. After surveilling the bank, they retrieved guns, masks, and gloves, and went to the Oakland Cemetery to prepare for the bank robbery. After concocting their plan, the five men donned black clothing and started drinking, taking drugs, and listening to music. Shortly before daybreak, Fowler left the car to use cocaine, because he did not want the others to see how much he had.

While Fowler was away, Haines City Police Officer Todd Horner drove up behind the stolen Oldsmobile and shone its spotlight at the car and its occupants. The Oakland Cemetery was known as a high-crime area, particularly for drug

2

trafficking, and as a place for leaving stolen cars. Officer Horner called the Haines City police dispatcher and reported that he was going to investigate a suspicious vehicle. He approached the group and told them not to move.

At trial, Gamble testified that Officer Horner then pulled out a gun and told the group to give him their names so that he could check for outstanding warrants. At that point, Fowler snuck up behind Officer Horner and Gamble started talking to Officer Horner to distract him. Once Fowler was directly behind Officer Horner, Fowler grabbed Officer Horner's gun and Gamble, Winston, and Paige helped Fowler gain control of it. At trial, Gamble explained that they had subdued Officer Horner because "by the clothing that we had on – I mean it happened so fast, we didn't have time to throw the clothes off and look like regular people. We was [sic] going to rob a bank. So, it was evident. He sees all this black, you know. He knowed [sic] that something ain't right, and he knowed [sic] before that I was robbing." Because it was spring in Florida, it was suspicious that all of the occupants were wearing black clothes and gloves.

Gamble told Officer Horner to relinquish the gun and that nothing would happen to him. Officer Horner then gave Fowler the gun and asked Gamble, "Chris, why are you doing this?" Gamble testified that when Officer Horner called him by his first name, the rest of the group lost control and "went a little crazy,"

3

and Fowler stated that they would not be able to "walk away from this thing."

Fowler told Officer Horner to get on his knees. Gamble told Fowler to calm down and to give him the gun. Gamble reminded Fowler that Officer Horner knew only Gamble's name; if anything happened, Gamble would handle it and nothing would happen to Fowler. In the midst of the conversation, Bouyie yelled from the car, "kill that cracker," and Fowler shot Horner in the back of the head.

Gamble was later arrested and convicted for robbing an ABC Liquor Store in 1999 and was sentenced to 20 years' imprisonment in a state prison. In March 2002, while serving his sentence, Gamble called Polk County law enforcement officials and told them he had robbed the Holiday Inn the night that Officer Horner was killed. He eventually told them that Fowler had murdered Horner. Gamble subsequently pled guilty to federal crimes, including the Holiday Inn robbery, and received a life sentence with a consecutive sentence of 107 years' imprisonment.

In 2007, Fowler was indicted for murdering Officer Horner with the intent to prevent Horner from communicating information about a federal offense[1] to a federal law enforcement officer or judge of the United States, in violation of 18

---

[1] The federal offenses that Fowler is alleged to have tried to conceal were: (1) the robbery of a Holiday Inn in violation of 18 U.S.C. § 1951; (2) conspiracy to commit bank robbery in violation of 18 U.S.C. §§ 371 and 2113; (3) conspiracy to commit robbery in violation of 18 U.S.C. §§ 371 and 1951; (4) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g); and (5) possession of cocaine and marijuana in violation of 21 U.S.C. § 844.

4

U.S.C. § 1512(a)(1)(C) ("Count 1").[2]  The jury found Fowler guilty on both counts, and the court sentenced him to life imprisonment for Count 1 and ten years' imprisonment for Count 2, which were to run consecutively.

## II.  DISCUSSION

In relevant part, 18 U.S.C. § 1512(a)(1)(C) provides that it is a federal criminal offense to  "kill[] . . . another person, with intent to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ."[3]  Thus, for the government to prove a violation of § 1512(a)(1)(C) it must show: (1) the defendant knowingly and willfully killed a person; and (2) the defendant killed the person with the intent to prevent the communication of information "relating to the commission or possible commission of a [f]ederal . . . offense . . . ."  18 U.S.C. § 1512(a)(1)(C).

There is no question that Fowler killed Officer Horner with the intent to prevent his further investigation and discovery of the group's criminal activities.

---

[2] Fowler was also indicted for knowingly using and carrying a firearm, during and in relation to a crime of violence for which he could be prosecuted in a federal court, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (j)(1), 1111(a), and 2 ("Count 2").

[3] We view the evidence in the light most favorable to the government, and all "reasonable inferences and credibility determinations are drawn in favor of the verdict."  United States v. Simpson, 228 F.3d 1294, 1299 (11th Cir. 2000).  A verdict of guilty cannot be disturbed "unless no trier of fact could have found guilt beyond a reasonable doubt.  United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir. 1995).

5

Fowler argues, however, that no evidence was presented either that: (1) it was likely that there would be a <u>federal</u> investigation of any of the federal crimes involving Fowler and his group; or (2) it was likely that the information Officer Horner might have obtained <u>would have been</u> transferred to a federal officer or federal judge by Officer Horner. Thus, Fowler contends the government failed to prove the federal nexus to the murder, which is an essential element of a violation of § 1512(a)(1)(C). Fowler misperceives the requirements of the statute.

Nothing in § 1512(a)(1)(C) requires proof that a federal investigation is ongoing, imminent, or likely. To the contrary, the statute explicitly provides that the murder must have been intended to prevent communication relating to the "<u>possible</u> commission" of a federal offense. <u>Id.</u> (emphasis added). Fowler's sufficiency argument is based on his incorrect assertion that the federal nexus required by § 1512(a)(1)(C) requires proof that the <u>victim</u> would have likely communicated information relating to the possible commission of a federal offense to federal authorities. In construing the statute this way, Fowler focuses on the victim's state of mind instead of, as the statute requires, the <u>defendant's</u> state of mind. His approach has been rejected by the majority of our sister circuits and by this court in <u>United States v. Veal</u>, 153 F.3d 1233, 1251-52 (11th Cir. 1998), which

6

addressed the similarly-worded § 1512(b)(3).[4]

In Veal, this court rejected a similar argument directed at § 1512(b)(3), which prohibits intimidating or threatening a person with intent to "hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense." § 1512(b)(3) (emphasis added). This court held that to prove the required federal nexus, the government need prove only that there was "the possibility or likelihood . . . that information would be transferred to federal authorities." Veal, 153 F.3d at 1251-52 (emphasis in original).

In order to establish a violation of § 1512(a)(1)(C), the same issue as the one currently before the court, the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits have all held that the government need not prove that a federal investigation is underway or imminent, but rather only that the defendant intended to prevent the murder victim from potentially communicating with federal law

---

[4] In relevant part, 18 U.S.C. § 1512(b)(3) provides that it is a federal offense to

[K]nowingly use[] intimidation, threaten[] or corruptly persuade[] another person, or attempt[] to do so, or engage[]in misleading conduct toward another person, with intent to . . . hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ." (emphasis added).

7

enforcement officials generally about a possible federal offense.[5] Subjective proof

that the victim actually or likely would have provided information to federal

authorities is not required; the defendant's intent is what matters. Accord United

States v. Wright, 536 F.3d 819, 824 (8th Cir. 2008) ("the government need not

prove that the defendant knew a federal investigation was underway, or even

contemplated, or that defendant intended to prevent the victim from

communicating with federal officials" but "that at least some part of a defendant's

motive in killing that victim was to prevent communication with law enforcement

---

[5] See United States v. Wright, 536 F.3d 819, 824 (8th Cir. 2008), cert. denied, 129 S. Ct. 1656 (2009); United States v. Harris, 498 F.3d 278, 286-87 (4th Cir. 2007) cert. denied, 128 S. Ct. 1703 (2008); United States v. Serrata, 425 F.3d 886, 897-898 (10th Cir. 2005) (in § 1512 cases "imminence of a federal investigation is of little or no consequence") (collecting cases); United States v. Bailey, 405 F.3d 102, 108 (1st Cir. 2005) (rejecting defendant's argument that similarly-worded and interpreted obstruction statute, § 1512(b)(3), "requires an existing or imminent federal investigation at the time of the defendant's misleading conduct"); United States v. Jefferson, 149 F.3d 444, 446 (6th Cir. 1998) (sufficient evidence that a murder had been motivated in part by a desire to eliminate a witness even though the murder could not have been intended to prevent the victim from reporting a robbery because the robbery had not yet been committed); United States v. Romero, 54 F.3d 56, 62 (2d Cir. 1995) ("The victim need not have agreed to cooperate with any federal authority or even to have evinced an intention or desire to so cooperate. There need not be an ongoing investigation or even any intent to investigate. Rather, the killing of an individual with the intent to frustrate the individual's possible cooperation with federal authorities is implicated by the statute."); United States v. Edwards, 36 F.3d 639, 645 (7th Cir. 1994), abrogated on other grounds, (holding that the essential mental state for violation of § 1512(a)(1)(C) is that "the defendant believed that a person might furnish information to federal officials and that he killed or attempted to kill that person in order to prevent such disclosure") (second emphasis added); United States v. Galvan, 949 F.2d 777, 783 (5th Cir. 1991). But see United States v. Bell, 113 F.3d 1345, 1349, 1357 (3d Cir. 1997) (holding that "the government may carry [its] burden [of proving a federal nexus] by showing that the conduct which the defendant believed would be discussed in these communications constitutes a federal offense, so long as the government also presents "additional appropriate evidence" and that the defendant's knowledge of the federal involvement or the officer's status as a federal officer is "irrelevant").

officials in the investigation of a possible federal crime") (emphasis, citation, and internal quotation marks omitted); United States v. Harris, 498 F.3d 278, 286-87 (4th Cir. 2007) ("So long as the information the defendant seeks to suppress actually relates to the commission or possible commission of a federal offense, the federal nexus requirement is established . . . Thus, under the plain meaning of the applicable statutory language, the government need not prove any state of mind regarding whether the potential investigation that a defendant sought to affect would be conducted by federal officers.") (emphasis omitted); United States v. Galvan, 949 F.2d 777, 783 (5th Cir. 1991) ("[T]he statute focuses on the defendant's intent: whether she thought she might be preventing [the witness's] future communication of information") (emphasis added).

We now join our sister circuits and apply the rationale in Veal, holding that the possible or potential communication to federal authorities of a possible federal crime is sufficient for purposes of section 1512(a)(1)(C). See id. at 1251-52, 1251 n.26.[6]

---

[6] Fowler's reliance on United States v. Ronda, 455 F.3d 1273 (11th Cir. 2006) is misplaced. That case involved police officers falsifying evidence and making false statements in the investigation of police shootings, and the evidence adduced at trial was that, when a police officer fires his weapon, a "'massive investigation'" ensues, which included consultation with federal officials. Id. at 1285-86. This court held that the evidence was sufficient for the federal nexus required for a § 1512(b)(3) conviction. Id. at 1287. Though there was evidence presented in Ronda that it was likely that the evidence would have been transferred to federal authorities, the Ronda court focused on and unequivocally adopted the Veal standard that criminal liability under "Section 1512(b)(3) 'does not depend on the existence or imminency of a federal case or

Here, the federal nexus requirement was clearly satisfied. When Officer Horner discovered the group at the cemetery, they were clad in black and wearing gloves on a spring morning in Florida in a high crime area. Gamble testified that it was obvious that the group was in the process of preparing for illegal activity. Three of them, including Gamble (who Officer Horner knew from his previous robberies) had just committed a robbery affecting interstate commerce; all of them were conspiring to rob a bank; there was evidence in the car to indicate that they were going to (or had already) engaged in armed robbery; and the group had in its collective possession firearms, a stolen car, marijuana, and cocaine. These were all federal crimes and could have led to a federal investigation and prosecution.[7] These facts adequately support Fowler's conviction for violating § 1512(a)(1)(C).

**AFFIRMED.**

---

investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime." Id. at 1287, 1290 (quoting Veal, 153 F.3d at 1250) (emphasis in Veal)).

[7] Bank robbery, robbery affecting interstate commerce, being a felon in possession of a firearm, and possession of a controlled substance violate the following statutory provisions in respective order: 18 U.S.C. §§ 2113, 1951, 922(g); 21 U.S.C. § 844(a).