(Slip Opinion)          OCTOBER TERM, 2010          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FOWLER *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 10–5443.   Argued March 29, 2011—Decided May 26, 2011

While preparing to rob a bank, petitioner Fowler and others were discovered by a local police officer, whom Fowler killed.  Fowler was convicted of violating the federal witness tampering statute, which makes it a crime "to kill another person, with intent to . . . prevent the communication by any person to a [Federal] law enforcement officer" of "information relating to the . . . possible commission of a Federal offense," 18 U. S. C. §1512(a)(1)(C).  Rejecting Fowler's argument that the evidence was insufficient to show that he had killed the officer intending to prevent him from communicating with a *federal* officer, the Eleventh Circuit held that a showing of a possible or potential communication to federal authorities was sufficient.

*Held:* In such circumstances, the Government must establish a §1512(a)(1)(C) violation by showing there was a reasonable likelihood that a relevant communication would have been made to a federal officer.  Pp. 3–10.

   (a) In a §1512(a)(1)(C) prosecution, "no state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is an . . . employee of the Federal Government," §1512(g)(2).  Thus, the Government must prove (1) a killing, (2) committed with a particular intent, namely, an intent (a) to "prevent" a "communication" (b) about "the commission or possible commission of a Federal offense" (c) to a federal "law enforcement officer."  P. 3.

   (b) Nothing in §1512(a)(1)(C)'s language limits it to instances in which the defendant has some identifiable law enforcement officers particularly in mind.  Any such limitation would conflict with the statute's basic purpose.  Witness tampering may prove more serious (and more effective) when the crime takes place before the victim has engaged in any communication at all with officers—at a time when

the precise communication and nature of the officer who may receive it are not yet known. Hence, the statute covers a defendant, like petitioner, who kills with intent to prevent communication with any and all officers. The Court must consequently decide what, if anything, the Government must show about the likelihood of a hypothetical communication with a federal officer where the defendant did not think specifically about any particular communication or its recipient. Pp. 4–7.

(c) To determine what the Government must prove in such instances, the Court looks to the dictionary definition of the statutory word "prevent," which means rendering an "intended," "possible," or "likely" event impractical or impossible by anticipatory action. No one suggests that the word "intended" sets forth the appropriate standard here. The Government and the Eleventh Circuit would rest their standard on the word "possible." But that standard would eliminate the independent force of the statutory "federal officer" requirement, and would extend the statute beyond its intended, basically federal, scope. Fashioning a standard based on the word "likely" is consistent with the statute's language and objectives. Thus, where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* officers only if there is a reasonable likelihood under the circumstances that, in the absence of the killing, at least one of the relevant communications would have been made to a federal officer. The Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not. But it must show that the likelihood of communication to a federal officer was more than remote, outlandish, or hypothetical. Pp. 7–10.

(d) Because Fowler's argument that the evidence is insufficient to satisfy a "reasonable likelihood" standard was not raised at trial, the lower courts must determine whether, and how, the standard applies in this case. P. 10.

603 F. 3d 883, vacated and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, THOMAS, SOTOMAYOR, and KAGAN, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment. ALITO, J., filed a dissenting opinion, in which GINSBURG, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–5443

CHARLES ANDREW FOWLER, AKA MAN, PETITIONER
*v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[May 26, 2011]

JUSTICE BREYER delivered the opinion of the Court.

The federal witness tampering statute makes it a crime "to kill another person, with intent to . . . prevent the communication by any person to a law enforcement officer . . . of the United States" of "information relating to the . . . possible commission of a Federal offense." 18 U. S. C. §1512(a)(1)(C). We focus on instances where a defendant killed a person with an intent to prevent that person from communicating with law enforcement officers in general but where the defendant did not have federal law enforcement officers (or any specific individuals) particularly in mind. The question before us concerns what, if anything, the Government must show beyond this broad indefinite intent in order to show that the defendant more particularly intended to prevent communication with *federal* officers as well. We hold that, in such circumstances, the Government must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer.

## I

In the early morning hours of March 3, 1998, Charles

Fowler and several other men prepared to rob a Florida bank. They met in a cemetery, put on black clothes and gloves, began to drink and use drugs, and discussed the proposed crime. Shortly before daybreak a local police officer, Todd Horner, came upon the group. He pulled out his gun and asked the men to identify themselves. Fowler and some of the others managed to overcome Horner and take his gun. After Horner spoke to one of the men by name, Fowler said, "Now we can't walk away from this thing." App. 38 (internal quotation marks omitted). And he shot and killed Horner.

Federal authorities charged Fowler with violating the federal witness tampering statute. He was convicted. On appeal, Fowler argued that the evidence was insufficient to show that he had killed Horner intending to prevent Horner from communicating with a *federal* officer. The Eleventh Circuit disagreed. It held that a showing of a "*possible* or *potential* communication to federal authorities" was sufficient. 603 F. 3d 883, 888 (2010).

Fowler sought certiorari. And because the Circuits have disagreed about this last-mentioned matter, we granted Fowler's petition for certiorari. Compare *United States* v. *Harris*, 498 F. 3d 278, 286 (CA4 2007) ("So long as the information the defendant seeks to suppress actually relates to the commission or possible commission of a federal offense, the federal nexus requirement is established"), with *United States* v. *Lopez*, 372 F. 3d 86, 91–92 (CA2 2004), vacated and remanded on other grounds, 544 U. S. 902 (2005) (requiring Government to show federal crime along with "'additional appropriate evidence'" that "the victim *plausibly* might have turned to federal officials"); see also *United States* v. *Bell*, 113 F. 3d 1345, 1349 (CA3 1997); *United States* v. *Causey*, 185 F. 3d 407, 422–423 (CA5 1999); *United States* v. *Wright*, 536 F. 3d 819, 824–825 (CA8 2008).

## II

The federal witness tampering statute in relevant part forbids the "kill[ing] or attempt[ed] kill[ing]" of "another person" with a certain "intent," namely, an

> "intent to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ." 18 U. S. C. §1512(a)(1)(C).

A related subsection says that in a prosecution for this offense

> "no state of mind need be proved with respect to the circumstance . . . that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government . . . ." §1512(g)(2).

This language makes clear that in a prosecution the Government must prove (1) a killing or attempted killing, (2) committed with a particular intent, namely, an intent (a) to "prevent" a "communication" (b) about "the commission or possible commission of a Federal offense" (c) to a federal "law enforcement officer or judge."

The question here is how this language applies when a defendant (1) kills a victim, (2) with an intent (a) to prevent a communication (b) about the commission or possible commission of a federal offense but (c) *to law enforcement officers in general rather than to some specific law enforcement officer or set of officers which the defendant has in mind.* This kind of circumstance is not necessarily rare, as the facts here illustrate. Fowler (we here assume) was not thinking specifically about federal officers, but he would nonetheless have wanted to prevent communication with federal officers from taking place (had he considered the matter).

### III

When the defendant has in mind a particular individual or a particular set of individuals with whom he fears the victim might communicate, the application of the statute is relatively clear. For instance, if a defendant kills a victim with the intent of preventing the victim from communicating with a particular individual, say John Smith, who the defendant knows is a federal law enforcement officer, the statute fits like a glove. If a defendant kills a victim with the intent of preventing the victim from communicating with Sam Smith, who is in fact (but who the defendant does not know is) a federal law enforcement officer, the statute still fits, for it specifically says that "no state of mind need be proved" with respect to this last-mentioned circumstance.

Nothing in the statutory language, however, limits it to these kinds of instances, instances in which the defendant has some law enforcement officer or set of officers, or other identifiable individuals, particularly in mind. Moreover, any such limitation would conflict with the statute's basic purpose. Witness tampering may prove more serious (and more effective) when the crime takes place before the victim has engaged in any communication at all with law enforcement officers—at a time when the precise communication and nature of the officer who may receive it are not yet known. Cf., *e.g.*, S. Rep. No. 97–532, pp. 14, 15 (1982) (statute applies "to offenses against witnesses, victims, or informants which occur before the witness testifies or the informant communicates with law enforcement officers"); *id.*, at 19 (witness "[i]ntimidation offenses are particularly insidious and do violence to traditional notions of justice because no one can be convicted of a crime which is not reported. [Section 1512] reaches intimidation offenses committed before a crime is reported to the appropriate authorities"). Hence the statute covers a defendant who kills with intent to prevent

communication with law enforcement officers generally (*i.e.,* with any and all law enforcement officers). And we must consequently decide what, if anything, the Government must show about the likelihood of a hypothetical communication with a federal law enforcement officer in circumstances where the defendant did not think specifically about any particular communication or its recipient.

In these circumstances, the application of the statute is not as simple. We cannot determine whether the individual the defendant had in mind is in fact a federal officer, because the defendant did not have a particular individual in mind. And we cannot insist that the defendant have had some general thought about federal officers in mind because the statute says that "no state of mind need be proved" in respect to the federal nature of the communication's recipient. §1512(g)(2). What, then, must the Government show to prove that such a defendant intended to prevent communications to federal officers?

We begin with two basic propositions. First, in our view, the Government need not show *beyond a reasonable doubt* (or even that it is *more likely than not*) that the hypothetical communication would have been to a federal officer. No Circuit has adopted this interpretation, and no party argues for it here. But see *post*, at 1–2 (SCALIA, J., concurring in judgment). And for good reason: The relevant question concerns the defendant's intent. The Government will already have shown beyond a reasonable doubt that the defendant possessed the relevant broad indefinite intent, namely, the intent to prevent the victim from communicating with (unspecified) law enforcement officers. And one can possess an intent (*i.e.,* one can act in order to bring about a certain state of affairs) even if there is considerable doubt whether the event that the intent contemplates will in fact occur. One can, for example, put up shutters with the intent of protecting the furniture from hurricane damage even if there is considerable doubt

that any hurricane will actually occur. One can drive to
Fenway Park with the intent of seeing the Red Sox play
that afternoon even if a mistake about the date means the
stadium is empty. One can blow up a bridge with the
intent of stopping an advancing army, even if the army
advances regardless, along a different route. And, simi-
larly, a defendant can kill a victim with *an intent* to
prevent the victim from communicating with federal law
enforcement officers even if there is some considerable
doubt that any such communication would otherwise have
taken place.

But, second, the Government must show more than
the broad indefinite intent we have described, the intent
to prevent communications to law enforcement officers in
general. That is so for two separate reasons. For one
thing, the statute speaks of an "intent to *prevent*" some-
thing. But (apart from mistakes, as in our Red Sox exam-
ple) one cannot act with an "intent to *prevent*" something
that could not possibly have taken place regardless. We
can speak of a Colorado trout fisherman who tries to
prevent his trout stream from being invaded by pike or
carp, but in ordinary circumstances we cannot speak
about trying to *prevent* the stream's invasion by whales.
Indeed, the dictionary defines "prevent" as "to render (an
*intended, possible, or likely* action or event) impractical
or impossible by anticipatory action." OED Online (Mar.
2011) (emphasis added), http://www.oed.com/view/Entry/
151073?rskey=QWN6QB&result=2&isAdvanced=false (all
Internet materials as visited May 23, 2011, and available
in Clerk of Court's case file).

For another thing, to allow the Government to show no
more than the broad indefinite intent we have described
(the intent to prevent communications to law enforcement
officers in general) would bring within the scope of this
statute many instances of witness tampering in purely
state investigations and proceedings, thus extending the

scope of this federal statute well beyond the primarily federal area that Congress had in mind. See *infra*, at 8–9. For both these reasons, unlike the dissent, we cannot read the statute as intending to excuse the Government from proving *something* about the hypothetical communication with federal officers. The question remains, what is that something?

## IV

We find possible answers to this question in the dictionary definition of the word "prevent." As we have said, that word applies where a defendant, by "anticipatory action," (here, killing a victim) intended "to render . . . impractical or impossible" an "action or event" (here, the victim's communication with a federal law enforcement officer) which (1) was *"intended,"* (2) was *"possible,"* or (3) was *"likely"* to have otherwise occurred.

No one suggests that the first word, the word "intended," sets forth the appropriate standard. That word in this context refers to the *victim's* intent. That intent is often difficult to discern. Moreover, to require the Government to prove it would prevent the statute from applying where it is plain that federal officers would have been involved in investigating and prosecuting the offense (for instance, robbing the United States Bullion Depository at Fort Knox), but where the defendant killed the victim before the victim had decided to communicate to law enforcement officers. Congress, however, intended the statute to apply in these last-mentioned circumstances. See *supra*, at 4.

The Government (and the Eleventh Circuit) would rest their standard on the second word, the word "possible." See Brief for United States 10 (standard is "whether it was reasonably possible that at least one of the communications that the murder . . . was intended to prevent would have been with a federal law enforcement official"); 603

F. 3d, at 888 (requiring showing of a "*possible* or *potential* communication to federal authorities"). But, in our view, that standard is difficult to reconcile with the statute's language and its intended, basically federal, scope. Cf. *supra,* at 6–7.

Often, when a defendant acts in ways that violate state criminal law, some or all of those acts will violate federal criminal law as well. And where a federal crime is at issue, communication with federal law enforcement officers is almost always a *possibility*. Thus, to allow the Government to show only a mere possibility that a communication would have been with federal officials is to permit the Government to show little more than the possible commission of a federal offense. (That is to say, the latter showing by itself would almost automatically show the statutorily necessary connection with a *federal* law enforcement officer.) The "possibility" standard would thereby weaken or eliminate the independent force of the separate statutory requirement that the defendant, in killing the victim, must intend to prevent communication with one who is "a law enforcement officer or judge *of the United States."* 18 U. S. C. §1512(a)(1)(C) (emphasis added); see §1515(a)(4) (defining "law enforcement officer" as "an officer or employee *of the Federal Government*" (emphasis added)). Cf. *Duncan* v. *Walker*, 533 U. S. 167, 174 (2001) (normally we must give effect "to every clause and word of a statute" (internal quotation marks omitted)); *Ratzlaf* v. *United States*, 510 U. S. 135, 140–141 (1994) (expressing particular reluctance to "treat statutory terms" as "surplusage" "when the words describe an element of a criminal offense").

Moreover, because of the frequent overlap between state and federal crimes, the use of a standard based on the word "possible" would transform a federally oriented statute into a statute that would deal with crimes, investigations, and witness tampering that, as a practical mat-

ter, are purely state in nature. See, *e.g.*, Dept. of Justice, Bureau of Justice Statistics, (FY 2008 Persons arrested and booked, Drug offense: Marijuana), http://bjs.ojp.usdoj.gov/fjsrc; Dept. of Justice, Federal Bureau of Investigation, 2008 Crime in the United States (Arrests), http://www2.fbi.gov/ucr/cius2008/arrests/index.html; (Table 29), http://www2.fbi.gov/ucr/cius2008/data/table_29.html (In 2008, 0.7% of arrests for marijuana offenses were made by federal law enforcement officers); see also *Jones* v. *United States*, 529 U. S. 848, 858 (2000) ("[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance in the prosecution of crimes" (internal quotation marks omitted)).

The defendant argues that we should fashion a standard based on the third word, the word "likely." And we agree that doing so is consistent with the statute's language and objectives. We consequently hold that (in a case such as this one where the defendant does not have particular federal law enforcement officers in mind) the Government must show *a reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer. That is to say, where the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer.

The Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not. For, as we have said, one can act with an intent to prevent an event from occurring without it being true beyond a

reasonable doubt (or even more likely than not) that the event would otherwise occur. (Recall the homeowner who closes his shutters in order to prevent damage from a hurricane that may not happen. *Supra*, at 5–6.) But the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical. Jones, who kills Smith to prevent his communicating with law enforcement officers in general, does not kill Smith to prevent his communicating with Lithuanian law enforcement officers, for there is no reasonable likelihood that any Lithuanian officers would become involved.

V

Fowler argues that the evidence in this case is insufficient to satisfy a "reasonable likelihood" standard. He concedes, however, that he did not raise this question specifically at trial. Tr. of Oral Arg. 21–22. We leave it to the lower courts to determine whether, and how, the standard applies in this particular case.

The judgment of the Court of Appeals for the Eleventh Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–5443

_____

CHARLES ANDREW FOWLER, AKA MAN, PETITIONER
_v._ UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[May 26, 2011]

JUSTICE SCALIA, concurring in the judgment.

I disagree with the Court's interpretation of 18 U. S. C. §1512(a)(1)(C). In my view, the Government must prove that the defendant intended to prevent a communication which, had it been made, would beyond a reasonable doubt have been made _to a federal law enforcement officer_. The Court's vague "reasonable likelihood" standard has no basis in the statutory text and will serve only to confuse judges and juries. Accordingly, although I agree the case should be remanded for the Eleventh Circuit to consider whether the objection to sufficiency of the evidence was preserved or whether the District Court committed plain error, I would hold that there was insufficient evidence to support Fowler's conviction.

I

Section 1512(a)(1)(C) of Title 18 makes it a federal crime "to kill another person, with intent to . . . prevent the communication by any person to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense." Viewed in isolation, this provision contains an ambiguity: Does the _mens rea_ of the statute include a specific intent to prevent communication to a law enforcement officer _of the United States;_ or is it satisfied by the mere intent to

prevent communication to a law enforcement officer *who happens to be* a law enforcement officer of the United States?

Happily, a different statutory provision resolves this ambiguity. It states that "no state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is an officer or employee of the Federal Government." §1512(g)(2). This makes clear that the first possibility is wrong, and the second right. But removing the "federal officer" requirement as an element of the statute's *mens rea* does not remove it as an element of the *actus reus*—that is, as an element of the facts that must be proved for conviction. It must be proved, and proved beyond a reasonable doubt, that the communication intended to be prevented was communication to a federal officer. Thus, if a suspect in an investigation murders an informant to prevent him from talking to authorities, but is unaware that the informant was working for the FBI, the suspect would be guilty: He would have committed a murder with the intention of preventing the informant's communication to authorities about his criminal activities, and the communication he sought to prevent would necessarily have been to federal law enforcement. Likewise, a suspect would be guilty if he committed a murder to prevent a witness from informing law enforcement that he lied on his federal income tax return: He sought to prevent a communication that would have been made to federal officials, because they alone prosecute federal tax violations. But a suspect who commits a murder with the general intent of preventing law enforcement from learning about activities that violate both state and federal law would not be guilty, because the Government would be unable to prove that the communication he sought to prevent necessarily would have been to a federal official.

Applying that standard, this is an easy case. There was evidence that Fowler murdered Officer Horner in order

to prevent him from communicating information about Fowler's criminal activities. But the only evidence proffered by the Government to establish that the communication would have been to a federal law enforcement agent was the fact that a different state police officer, four years later, contacted federal law enforcement about a robbery by Fowler's confederate—and that only because the state-law statute of limitations for the robbery had expired. That is not nearly enough to demonstrate Fowler's guilt beyond a reasonable doubt.

## II

The Court gives the statute a broader reading than the one I ascribe. The Government can obtain a conviction, it says, so long as it can prove a "reasonable likelihood" that the communication would have been made to a federal law enforcement officer. I know of no precedent for using a "likelihood" standard rather than the "beyond a reasonable doubt" standard for a finding of fact essential to a criminal conviction; and the justifications the Court presents for that course in the present case are not convincing.

The Court maintains that the Government need not show beyond a reasonable doubt that the communication would have been to a federal officer because "[t]he relevant question concerns the defendant's intent." *Ante*, at 5. But that reasoning is directly contrary to §1512(g)(2), which expressly states that the defendant's intent is *not* the relevant question with respect to the federal character of law enforcement officer meant to be deprived of the information. The Court's observation that "a defendant can kill a victim with *an intent* to prevent the victim from communicating with federal law enforcement officers even if there is some considerable doubt that any such communication would otherwise have taken place," *ante*, at 6, is completely irrelevant to the question presented.

The Court also proclaims that a narrower view "would conflict with the statute's basic purpose," which is to prevent witness tampering "at a time when the precise communication and nature of the officer who may receive it are not yet known." *Ante*, at 4. It cites no basis for attributing that purpose, and there is none—other than the fact that it supports the Court's outcome. Another purpose is just as likely—and indeed more likely, since it can be achieved without abandonment of the ancient rule that in criminal prosecutions facts must be found beyond a reasonable doubt. Murder, after all, is a crime, and often a capital crime, under all state laws. There is no reason to ascribe to Congress the "purpose" of transferring murder prosecutions that would ordinarily be brought in state court to federal court based on only a tangential federal interest. Congress was concerned with preserving the integrity and effectiveness of *federal* prosecutions, and where they are not clearly involved (as the ordinary beyond-a-reasonable-doubt standard would require) a federal murder prosecution has no proper place. Limited as I have suggested, the federal law would still have ample scope, reaching what were surely the principal cases Congress had in mind—the killing of prospective witnesses in federal trials or in ongoing federal investigations. Here, as would be the case in many situations involving a merely hypothetical link to a federal investigation, Fowler murdered a state police officer. The natural place to have prosecuted him would have been state court.

The Court's analysis is even less persuasive in light of the rule of lenity, under which we must construe ambiguous criminal statutes in favor of the defendant. Here, the Court adopts a kind of rule of harshness, discarding the most straightforward construction of the text in favor of textually implausible one, based on vague intuitions about the statute's purpose. The Court's opinion never cites the rule of lenity, probably because it cannot honestly say that

the statute is so clear that "there is no ambiguity for the rule of lenity to resolve." *Burgess* v. *United States*, 553 U. S. 124, 136 (2008).

To make matters worse, the Court's standard is hopelessly indeterminate. The Government must show that a communication to a federal officer is "reasonably likely," which is less likely than "more likely than not," but more likely than "reasonably possible." *Ante*, at 7–9. I doubt that any jury can grasp the distinction between "you must find that a communication to a federal officer was reasonably likely" and "you must find that a communication to a federal officer was reasonably possible." Understandably, the Court refuses to give any examples of what "reasonably likely" means, except for an absurd example involving communications with Lithuanian police officers, *ante*, at 10—which obviously would not be "reasonably possible" either. Indeed, the Court refuses to apply its standard to the facts of this case, leaving that precarious task to the lower court.

## III

The dissent adopts a view of the statute that is even broader than the Government's. It effectively contends that the Government need not prove *anything* with respect to the fact that the communication sought to be prevented was "to a law enforcement officer . . . of the United States." As long as the Government can prove that the defendant sought to prevent the communication of information about a federal crime (including a federal crime that is also a state crime) it will necessarily have proved that the "set of law enforcement officers (whose identities were unknown to him)" he had in mind "included law enforcement officers who were employed by the United States." *Post*, at 3 (opinion of ALITO, J.). Conviction requires neither any specific intent regarding the federal status of the officer, nor even any likelihood that a communication to a federal

officer would have occurred.

The principal defect in this interpretation is that it makes the words "of the United States" superfluous. Section 1512(a)(1)(C) specifically requires that the information the defendant seeks to prevent from being communicated be "information relating to the commission or possible commission of a Federal offense." If the phrase "to a law enforcement officer . . . of the United States" requires nothing more than this it is utterly without effect. The implication of this view is that Congress enacted §1512(a)(1)(C)'s reference to "a law enforcement officer . . . of the United States," only to immediately nullify it by §1512(g)(2)'s "no state of mind" provision. Not likely—and not sound statutory interpretation.

The dissent claims that my analysis "confuses what the prosecution must prove with what a rational jury may choose to infer in a particular case." *Post*, at 6. I find this contention difficult to understand. In the dissent's view, a properly instructed jury should be required to find *neither* that the defendant's *mens rea* had any connection to a federal officer, *nor* that the defendant's *actus reus* had any connection to a federal officer. It therefore follows that under the dissent's view, a properly instructed jury should be required to find nothing about a connection to a federal officer beyond the fact that the information related to a federal offense, which means that, unless the jury is acting irrationally or is engaging in jury nullification, the "of the United States" provision is indeed superfluous. The dissent is correct that the proof of one element of a crime (such as an overt act) can sometimes be used to prove that a different element (such as a conspiratorial agreement) is satisfied, *post*, at 6–7, n. 2; but in such cases, the jury is instructed that it is required to make a separate finding to convict (*e.g.,* that a conspiratorial agreement actually occurred). Here, the dissent identifies no separate finding the jury must make beyond the fact of a federal offense.

The dissent also observes that when a defendant murders a federal officer to prevent him from communicating information about a nonfederal crime, he does not violate the statute. *Post*, at 7. This observation convincingly establishes that the statutory words "Federal offense" are not superfluous under the dissent's view, an observation irrelevant to my point that the dissent makes the statutory words "of the United States" superfluous.

The dissent contends that my interpretation "has no grounding in the language of the statute." *Post*, at 4. It asserts that "the text of the statute makes it perfectly clear that the federal officer requirement is exclusively an element of the defendant's *mens rea*." *Post*, at 5 (internal quotation marks omitted). Perhaps the only thing "perfectly clear" about this statute is that it states the precise opposite of that proposition: "[N]o state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is an officer or employee of the Federal Government." §1512(g)(2).

The dissent's interpretation would federalize crimes that have no connection to any federal investigation. A person caught by a state police officer with marijuana who murders the state police officer to cover it up could be prosecuted in federal court. That would approach the outer limits of Congress's enumerated powers. We have adopted a federalism principle that applies when a statute would render "traditionally local criminal conduct . . . a matter for federal enforcement": "[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance in the prosecution of crimes." *Jones* v. *United States*, 529 U. S. 848, 858 (2000) (internal quotation marks omitted). Thus, the dissent adds to the Court's "rule of harshness" a rule of antifederalism, under which a court must actually ignore a federal connection that Congress prescribed so as to avoid intrusion into traditionally local law enforcement.

\*     \*     \*

Because the Government did not establish that Fowler intended to prevent a communication that, if made, would have been made to a federal law enforcement officer, there was insufficient evidence to convict him of violating §1512(a)(1)(C). Since there remains, however, the question whether Fowler preserved this issue at trial or whether the inadequacy of the evidence constituted plain error, I concur in the Court's order vacating the judgment and remanding for resolution of that question.

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–5443

_____

## CHARLES ANDREW FOWLER, AKA MAN, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[May 26, 2011]

JUSTICE ALITO, with whom JUSTICE GINSBURG joins, dissenting.

The decision of the Court fails to follow the clear language of 18 U. S. C. §1512(a)(1)(C). Instead of heeding the statutory text, the Court has effectively amended the statute by adding a new element.

I

As relevant here, §1512(a)(1)(C) makes it a federal crime "to kill another person, with intent to . . . prevent the communication by any person to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense." Also important for present purposes is §1512(g)(2), which provides, among other things, that "[i]n a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is an officer or employee of the Federal Government."

Putting these two provisions together, what had to be shown in the present case was as follows:
(1) Fowler killed Officer Horner,
(2) with the intent to prevent any person (*i.e.*, either Officer Horner or someone else) from communicating,
(3) to a person who (whether or not known as such to

Fowler) was a federal law enforcement officer,
(4) information concerning the possible commission of a federal crime.

The question before us is whether there was sufficient evidence to support Fowler's conviction, and thus we must ask whether any rational jury could find that all of the elements noted above were adequately established. See *United States* v. *Powell*, 469 U. S. 57, 67 (1984).

There can be no dispute that there was sufficient evidence to establish elements (1), (2), and (4). That is, there was ample evidence to show (1) that Fowler killed Officer Horner, (2) that he did so with the intent to prevent the communication of information about what Officer Horner had seen, and (4) that this information concerned the possible commission of at least one federal crime—for example, conspiracy to rob a bank in violation of 18 U. S. C. §§371, 2113.

Thus, the only remaining question is whether there was enough evidence to permit a rational jury to infer that element (3) had been satisfied. And in connection with this question, it is important to keep in mind three things that element (3) *does not* require.

First, element (3) does not demand proof that Officer Horner, had he not been killed, would have reported—or even might have reported—what he saw to anyone, much less to a federal officer. Element (3) is solely concerned with a defendant's intent.

Second, while element (3) requires proof that Fowler intended to prevent *some* law enforcement officer from learning what Officer Horner had seen, element (3) does not require proof that Fowler had any particular law enforcement officer in mind. Section 1512(a)(1)(C) simply demands that the recipient of the information be "a law enforcement officer." Thus, it would be enough if Fowler's intent was to prevent Officer Horner's information from reaching *any* federal law enforcement officer.

Third, element (3) does not demand proof that Fowler *knew* that the generic officer noted above was a federal, as opposed to a state or local, law enforcement officer. Section 1512(g)(2) specifically rules out any such requirement. It is enough that our generic officer *was in fact* a federal officer.

When the meaning of element (3) is understood, it is clear that the decision of the Court of Appeals in this case must be affirmed. A rational jury could infer that Fowler's intent was to prevent information about what Officer Horner had seen from reaching any person who could bring about his arrest and conviction. In other words, a rational jury could infer that Fowler, in effect, had in mind a set of law enforcement officers (whose identities were unknown to him) who could set in motion a chain of events that would land him in prison. And since the information that Officer Horner possessed related to, among other things, the possible commission of a federal crime, a rational jury could infer that this group included law enforcement officers who were employed by the United States. The question presented in this case is as simple as that.

## II

The Court begins on the right track, observing that the "relevant question concerns the defendant's intent" and that therefore "the Government need not show *beyond a reasonable doubt* (or even that it is *more likely than not*) that the hypothetical communication would have been to a federal officer." *Ante*, at 5 (emphasis in original). But the Court veers off course when it goes on to hold that the prosecution was required to show that, if Officer Horner had not been killed, there was a "*reasonable likelihood*" that his information would have reached a federal officer. *Ante*, at 9 (emphasis in original).

The Court reaches this conclusion based on the meaning

of the word "prevent." See *ante*, at 6–10. The Court starts with the proposition that "apart from mistakes . . . one cannot act with an 'intent to *prevent*' something that could not possibly have taken place regardless." *Ante*, at 6 (emphasis in original). I understand this to mean that a rational person will not take action to prevent something that the person knows is not possible. This is true, but it does not follow that a rational person will not take action to prevent an undesirable event unless the event is "reasonably likely." Risk-averse people do this all the time. They refrain from flying to avoid dying in a plane crash. They shun rooms on the upper floors of hotels to prevent being trapped in the event of a fire.

What matters under §1512(a)(1)(C) is not the likelihood that information about a possible federal crime will be conveyed to a federal officer. What matters is the intent of the person who kills or attempts to kill in order to prevent that information from reaching such an officer. The Court's "reasonable likelihood" test has no basis in the text of §1512(a)(1)(C).

The Court's test also makes little sense. Under this test, the application of §1512(a)(1)(C) depends on a witness-killer's toleration of risk. According to the Court, §1512(a)(1)(C) does not reach a killer who has so little regard for human life that he or she is willing to murder in order to prevent even a remote possibility that a witness will inform the authorities. It is hard to imagine why Congress would have wanted to draw this line.

### III

JUSTICE SCALIA's interpretation of §1512(a)(1)(C) also has no grounding in the language of the statute. He makes the fundamental mistake of confusing §1512(a) (1)(C)'s *mens rea* and *actus reus* elements. JUSTICE SCALIA states that what he terms "the 'federal officer' requirement" is "an element of the *actus reus*," *ante*, at 2

(opinion concurring in judgment), but the text of the statute makes it perfectly clear that "the 'federal officer' requirement" is exclusively an element of the defendant's *mens rea*.

The statute provides:

> "(a)(1)  Whoever kills or attempts to kill another person, *with intent to—*
>
> .        .        .        .        .
>
> "(C)  prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
>
> "shall be punished as provided in paragraph (3)." §1512(a)(1)(C) (emphasis added).

The *actus reus* of this provision is set out in its first eight words ("Whoever kills or attempts to kill another person"). Everything else—that is, everything that follows the phrase "with intent to"—concerns the defendant's *mens rea*.

JUSTICE SCALIA interprets §1512(g)(2) as transforming "the 'federal officer' requirement" from an element of the *mens rea* into an element of the *actus reus*, see *ante*, at 2–3, but this reading is plainly wrong. Section 1512(g)(2) provides in relevant part:

> "In a prosecution for an offense under [18 U. S. C. §1512], no state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is an officer or employee of the Federal Government."

What this clearly means, as the Court recognizes, see *ante*, at 4, is simply that a defendant need not intend to prevent a qualifying communication from reaching an

officer *whom the defendant knows to be a federal, as opposed to a state or local law enforcement officer*. But nothing in this provision adds to the *actus reus* elements in §1512(a)(1)(C).

JUSTICE SCALIA's principal criticism of my interpretation of the statute is that "it makes the words 'of the United States' superfluous." *Ante*, at 6.[1] He incorrectly states that under my interpretation "the Government need not prove *anything* with respect to the fact that the communication sought to be prevented was 'to a law enforcement officer . . . of the United States'" and that "[a]s long as the Government can prove that the defendant sought to prevent the communication of information about a federal crime (including a federal crime that is also a state crime) it will necessarily have proved that [the set of officers whom the defendant had in mind] 'included law enforcement officers who were employed by the United States.'" *Ante*, at 5 (emphasis in original). This description of my interpretation confuses what the prosecution must prove with what a rational jury may choose to infer in a particular case.

In order to violate §1512(a)(1)(C), a defendant must have an intent regarding two things: first, the substance of the communication that the defendant wishes to prevent (information concerning, among other things, the commission or possible commission of a federal crime) and, second, the recipient of the communication (a law enforcement officer or judge who turns out to be a federal officer or judge).

It is true that evidence regarding the federal character of an offense may lead a rational jury to infer that the officers whom the defendant had in mind included federal officers.[2] But those two elements remain distinct; both

––––––––
[1] The Court makes a related argument. See *ante*, at 8.
[2] There is nothing unusual about the proposition that the proof of one

must be proved beyond a reasonable doubt; and it is entirely possible for a defendant to satisfy one without also satisfying the other. For example, if a uniformed federal officer came upon a defendant during the commission of a purely state offense (for example, a murder, assault, or rape not committed in a federal enclave), the defendant might kill or attempt to kill the officer to prevent the officer from radioing in that information to the officer's superiors. This defendant would have the intent to prevent a communication to a federal officer, but there would be no violation of the statute because the information would not concern a federal crime. Thus, contrary to JUSTICE SCALIA's suggestion, under my interpretation, the two intent elements—relating to the substance of the feared communication and the identity of the feared recipient—are not redundant.

JUSTICE SCALIA invokes a rule that disfavors the interpretation of a federal criminal statute in a way that "'significantly change[s] the federal-state balance in the prosecution of crimes.'"[3] *Ante*, at 7 (quoting *Jones* v. *United States*, 529 U. S. 848, 858 (2000)). This rule, however, does not justify ignoring the plain terms of the statute.

\*    \*    \*

The Court has effectively amended §1512(a)(1)(C) by adding an element that is nowhere to be found in the text of the statute. And the Court's new element makes little sense and will create confusion for trial judges and juries.

––––––––––

element of a crime may provide a sufficient basis for inferring that another element may be satisfied. To take a common example, overt acts committed in furtherance of a conspiracy may be sufficient to permit a jury to infer that a conspiratorial agreement was reached. But that does not alter the need to prove beyond a reasonable doubt that such an agreement was reached.

[3] The Court again makes a related argument. See *ante*, at 8–9.

Following the language of §1512(a)(1)(C), I would hold that the evidence in this case was sufficient to establish all of the elements that Congress saw fit to include. I therefore respectfully dissent.