[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15818
_____

D.C. Docket No. 8:07-cr-00380-JSM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES ANDREW FOWLER,
a.k.a. Man,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 21, 2014)

Before CARNES, Chief Judge, HULL and COX, Circuit Judges.

CARNES, Chief Judge:

From time immemorial, human societies "have invariably recognized it

among their earliest practical necessities to allot a portion of the virgin soil as a

cemetery, and another portion as the site of a prison."[1]  Because of a murder Charles Fowler committed in a cemetery, he has been sentenced to life in prison. He will stay in prison until his mortal remains are taken to a cemetery, unless his life sentence is reduced to ten years, as he contends that it should be.  That is what this appeal is about.

For murdering a police officer in a Florida cemetery, Fowler was convicted under the federal witness-tampering statute, 18 U.S.C. § 1512(a)(1)(C), and under 18 U.S.C. § 924(c)(1) for using a firearm during the commission of a federal crime of violence.  He was originally sentenced to life imprisonment on the witness-tampering count with a consecutive ten-year sentence — the mandatory minimum — on the firearm count.  After Fowler successfully challenged his witness-tampering conviction on direct appeal, the district court resentenced him to life imprisonment on the surviving firearm count, explaining that its original sentence "was obviously a package" and that it never would have imposed a ten-year sentence "on a murder-with-a-firearm charge standing alone."  Fowler appeals that life sentence, contending that the district court had no authority to resentence him on the remaining firearm count and, even if it did, the imposition of an enhanced sentence on that count violated his due process rights.

---

[1] Nathaniel Hawthorne, The Scarlet Letter 79–80 (Samuel E. Cassino 1892) (1850).

I.

A.

In the early morning hours of March 3, 1998, before the rosy fingers of dawn had crept across the Florida sky, Fowler and four other men gathered at a cemetery in a high-crime area of Haines City.  They weren't there to pay homage to the dead, but more prosaically to prepare for a planned bank robbery.  Before the morning was done, Fowler would add to the death permeating those grounds.

Only a few hours earlier, three of the men — Christopher Gamble, Jeffrey Bouyie, and Andre Paige — had robbed a Holiday Inn at gunpoint.  Fowler had stolen an Oldsmobile and committed a separate robbery.  After casing a bank in the stolen car, those four and another conspirator obtained guns, masks, and gloves, and went to the cemetery to prepare for the heist.  When they arrived at the cemetery, the group donned black clothing and the gloves, and they started drinking, using drugs, and discussing their plan.  Just before first light, while the morning fog was starting to lift, Fowler walked toward a nearby orange grove so that he could use cocaine without having to share it with the others.

During Fowler's absence, Haines City Police Officer Christopher Todd Horner, who was on routine patrol, spotted the Oldsmobile and called in a report of a suspicious car with no visible license plate.  He pulled up in his patrol car behind the stolen car and aimed a spotlight at the four men who were sitting inside the car.

3

He approached them with his gun drawn and asked for their names so that he could check for outstanding warrants.  Returning from the orange grove, Fowler ambushed Officer Horner from behind and, with the help of the others, managed to wrestle the officer's firearm away from him.  Fowler then ordered Officer Horner to get on his knees and pointed the gun at the back of his head.

Officer Horner, who knew Gamble from a number of earlier encounters, called out to him by name, pleading:  "Chris, why are you doing this?  Please don't do this."  From that, the others realized that the officer knew Gamble.  Fowler said that they could no longer "walk away from this thing."  Amid the commotion, Bouyie yelled out, "[K]ill that cracker."  Fowler obliged, firing a single fatal shot into the back of Officer Horner's head.  Gamble then grabbed the gun from Fowler and shoved it underneath Officer Horner's lifeless body, trying to make the murder look like a suicide.

No one was fooled by the attempt to stage a suicide.  Still, Officer Horner's murder remained unsolved until March 2002, four years later, when Gamble — who was then serving a 20-year sentence for robbing a liquor store in 1999 — told law enforcement officials that he had robbed the Holiday Inn the night the officer was killed at the cemetery and that Fowler had murdered him.

B.

In September 2007, Fowler was indicted by a federal grand jury on two counts stemming from the murder of Officer Horner.  Count 1 charged Fowler under the federal witness-tampering statute, 18 U.S.C. § 1512(a)(1)(C), for murdering Officer Horner with the intent to prevent him from communicating information about a federal offense to a federal law enforcement officer or federal judge.[2]  Count 2 charged Fowler with using a firearm during a federal crime of violence — specifically, conspiracy to commit robbery and conspiracy to commit bank robbery — and, in doing so, murdering Officer Horner, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(j)(1), and 1111(a).  A jury found Fowler guilty as charged on both counts.

In preparation for sentencing, the United States probation office compiled a presentence investigation report (PSR).  Although the federal sentencing guidelines typically provide for the grouping of closely related counts, see U.S.S.G. § 3D1.2, Fowler's conviction on Count 2 was not covered by the grouping rules because it carried a mandatory consecutive sentence of at least ten years imprisonment.  See id. § 3D1.1(b)(1) (excluding from the grouping rules any count subject to a mandatory consecutive sentence); 18 U.S.C. § 924(c)(1)(A)(iii) (imposing a

---

[2] The indictment identified six federal offenses that Officer Horner could have communicated information about to a federal officer, including the armed robbery of the Holiday Inn, see 18 U.S.C. § 1951, conspiracy to commit bank robbery, see 18 U.S.C. §§ 371, 2113, conspiracy to commit robbery, see 18 U.S.C. § 1951, possession of a firearm by a convicted felon, see 18 U.S.C. § 922(g), and possession of cocaine and marijuana, see 21 U.S.C. § 844(a).

mandatory minimum sentence of ten years "in addition to the punishment provided for such crime of violence" where a defendant discharges a firearm during that crime of violence). The PSR calculated a total offense level of 46 on Count 1, the witness-tampering count, which yielded a recommended guidelines sentence of life imprisonment when combined with Fowler's criminal history category of VI.[3] As for Count 2, the PSR calculated a guidelines sentence of ten years imprisonment, to run consecutively to the recommended life sentence on Count 1. Without objections from either side, the district court adopted the PSR's guidelines calculations and, after considering the sentencing factors in 18 U.S.C. § 3553(a), sentenced Fowler to life imprisonment on Count 1 plus a consecutive term of ten years on Count 2.

Fowler appealed his conviction for witness tampering, contending that the evidence was insufficient to show that Officer Horner likely would have communicated with a federal official. See United States v. Fowler, 603 F.3d 883, 884, 886 (11th Cir. 2010). We affirmed on the ground that the "possible or potential communication to federal authorities of a possible federal crime is sufficient for purposes of [the witness-tampering statute]," and we concluded that the evidence presented at Fowler's trial satisfied this standard. Id. at 888. The

---

[3] Fowler's criminal history category was based on his prior convictions, which extended all the way back to when he was 14 years old, on seven counts of grand theft of a motor vehicle, three counts of escape from a juvenile detention facility, three counts of battery, two counts of resisting an officer without violence, two counts of trespass, and one count each of possession of cocaine, possession of marijuana, and criminal mischief.

Supreme Court granted Fowler's petition for a writ of certiorari and reversed, holding that the government must show more than a mere possibility of communication with a federal official to obtain a conviction under the statute. Fowler v. United States, — U.S. —, 131 S.Ct. 2045, 2052–53 (2011). The Court held that the government must instead establish "a reasonable likelihood" that the victim would have made "at least one relevant communication . . . to a federal law enforcement officer." Id. at 2052 (emphasis omitted). The Court remanded the case to us for a determination of whether the evidence presented at trial was sufficient to satisfy the "reasonable likelihood" standard, id. at 2053, a task that we handed off to the district court in a remand of our own, United States v. Fowler, 654 F.3d 1178, 1179 (11th Cir. 2011).

The district court on remand concluded that the evidence was insufficient to satisfy the standard announced by the Supreme Court, and it offered the government the opportunity to retry Fowler on Count 1. The district court judge also explained that, regardless of any retrial, he was going to vacate the sentence on Count 2 and resentence Fowler on that count "because obviously a ten-year sentence on Count 2 is interrelated with the life sentence I gave on Count 1. I would not have given someone ten years on a murder-with-a-firearm charge standing alone." After the government advised the district court that it would not pursue a retrial on Count 1, the court vacated Fowler's conviction and life sentence

7

on that count, vacated his consecutive ten-year sentence on Count 2, and scheduled resentencing on Count 2.

At the district court's direction, the probation office prepared an updated PSR calculating the applicable guidelines range on the sole surviving count of conviction. Even without his conviction on Count 1, Fowler's total offense level on Count 2 remained at 46, his criminal history category remained at VI, and the sentence recommended by the guidelines remained at life imprisonment, the statutory maximum for that offense under 18 U.S.C. § 924(j)(1). Fowler did not object to the PSR's revised guidelines calculations; instead, he objected to the resentencing process in general.

Fowler insisted that the district court lacked the authority to resentence him under the so-called "sentencing package doctrine" because his two original counts of conviction were not "interdependent" for sentencing purposes. He argued that those two counts were not interdependent because Count 2 "was not predicated on the [witness-tampering] offense alleged in Count 1" and the two counts had not been grouped together in the PSR calculations for the original sentencing. Fowler alternatively argued that, even if the district court could proceed with resentencing, it could not impose a sentence greater than the ten-year term originally imposed on Count 2 without raising a presumption of judicial vindictiveness. That presumption, he asserted, was not one the government could overcome.

8

The district court determined that it had the authority to resentence Fowler on the surviving count because its original sentence on Counts 1 and 2 "was obviously a package sentence" and "the sentence on Count 2 was given based on the sentence that was given in Count 1." The court explained that the sentences imposed on both counts were not only factually interrelated, because they both stemmed from the murder of Officer Horner, but were also structurally interrelated because the original sentence on Count 2 was consecutive to the sentence imposed on Count 1.

The government then argued for a life sentence on Count 2 based on the relevant § 3553(a) factors, including the "brutal and senseless nature" of Officer Horner's murder, Fowler's extensive criminal history, and the recommended guidelines sentence. In light of the advisory guidelines sentence of life imprisonment and the § 3553(a) factors, the district court resentenced Fowler to life on Count 2.

## II.

Fowler's primary contention is that the district court had no authority to resentence him on Count 2, the surviving count of conviction, but instead was required to let the original ten-year sentence on that count stand. He argues that for purposes of the "sentencing package doctrine" the firearm count was not

9

"interdependent" with the witness-tampering count, which was overturned.[4]  He points out that the two counts were not grouped together under the sentencing guidelines in the PSR for the original sentencing.

The label "sentencing package doctrine" is a bit of a misnomer.  It is not so much a doctrine as it is a common judicial practice grounded in a basic notion of how sentencing decisions are made in cases involving multiple counts of conviction.  The notion is that, especially in the guidelines era, sentencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence — the "sentence package" — that reflects the guidelines and the relevant § 3553(a) factors.  See United States v. Martinez, 606 F.3d 1303, 1304 (11th Cir. 2010); United States v. Gari, 572 F.3d 1352, 1365–66 (11th Cir. 2009); United States v. Klopf, 423 F.3d 1228, 1245 (11th Cir. 2005).  A criminal sentence in a multi-count case is, by its nature, "a package of sanctions that the district court utilizes to effectuate its sentencing intent consistent with the Sentencing Guidelines" and with the § 3553(a) factors.

---

[4] Some of our opinions have treated the sentencing package or interdependence issue as one of jurisdiction to resentence a defendant on the surviving counts of conviction, instead of as a question of authority to do so. See United States v. Watkins, 147 F.3d 1294, 1296–97 (11th Cir. 1998); United States v. Mixon, 115 F.3d 900, 901–03 (11th Cir. 1997).  Characterizing the issue as one of jurisdiction may overstate the matter. See generally Sebelius v. Auburn Reg'l Med. Ctr., — U.S. —, 133 S.Ct. 817, 824 (2013) (commenting on the "profligate use of the term 'jurisdiction'"); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 90, 118 S.Ct. 1003, 1010 (1998) (observing that "jurisdiction" has been "a word of many, too many, meanings") (quotation marks omitted).  But it does not matter whether we characterize the question as one of jurisdiction or one of authority because the result is the same either way.

See United States v. Stinson, 97 F.3d 466, 469 (11th Cir. 1996).  The thinking is that when a conviction on one or more of the component counts is vacated for good, the district court should be free to reconstruct the sentencing package (even if there is only one sentence left in the package) to ensure that the overall sentence remains consistent with the guidelines, the § 3553(a) factors, and the court's view concerning the proper sentence in light of all the circumstances.  See id.; see also Pepper v. United States, — U.S. —, 131 S.Ct. 1229, 1251 (2011) (explaining that because "[a] criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent," which "may be undermined by altering one portion of the calculus, an appellate court when reversing one part of a defendant's sentence may vacate the entire sentence so that, on remand, the trial court can reconfigure the sentencing plan to satisfy the sentencing factors in 18 U.S.C. § 3553(a)") (alterations, citations, and quotation marks omitted); Martinez, 606 F.3d at 1304 ("[W]e have adopted a holistic approach to resentencing, treating a criminal sentence as a package of sanctions that may be fully revisited upon resentencing.") (citation and quotation marks omitted); United States v. Mixon, 115 F.3d 900, 903 (11th Cir. 1997) ("If a multicount sentence is a package — and we think it is — then severing part of the total sentence usually will unbundle it.") (quotation marks omitted).  The sentence package that has been unpackaged by a

reversal is to be repackaged at resentencing using the guidelines and the § 3553(a) factors.

Fowler's challenge is based on the supposed lack of interdependence between his two original counts of conviction. It relies on an outmoded distinction between resentencing proceedings following a successful direct appeal and those following a successful 28 U.S.C. § 2255 proceeding. On direct appeal, we have routinely, without hesitation and as a matter of course, vacated entire sentences and remanded for resentencing on all surviving counts after vacating a conviction or sentence on some, but not all, of the counts. See, e.g., United States v. Lander, 668 F.3d 1289, 1298 (11th Cir. 2012); United States v. Jones, 601 F.3d 1247, 1267 (11th Cir. 2010); United States v. Hernandez, 145 F.3d 1433, 1440–41 (11th Cir. 1998) ("In accord with our established precedent, since we must vacate the sentence based upon status as a 'career offender' and that portion of the sentence dealing with deportation, we vacate the entire sentence and remand for resentencing."); United States v. Lail, 814 F.2d 1529, 1530 (11th Cir. 1987) (rejecting a defendant's invitation on direct appeal "to simply vacate one of the sentences and leave the other in effect" because "the better course is to remand to the district court for resentencing"). The underlying rationale, as we have already explained, is that a criminal sentence in a multi-count case is inherently "a package of sanctions that the district court utilizes to effectuate its sentencing intent,"

12

Stinson, 97 F.3d at 469, and once that package is opened and something is removed, the contents that remain "may be fully revisited upon resentencing," Martinez, 606 F.3d at 1304. Or as we have put it on other occasions:

> Multiple count convictions present the trial judge with the need for a sentencing scheme which takes into consideration the total offense characteristics of a defendant's behavior. When that scheme is disrupted because it has incorporated an illegal sentence, it is appropriate that the entire case be remanded for resentencing.

Gari, 572 F.3d at 1366 (quotation marks omitted); see also Hernandez, 145 F.3d at 1441. That is our practice, and has always been our practice, when convictions are set aside on direct appeal.

By contrast, when convictions are set aside in § 2255 proceedings, our willingness to permit full resentencing on unchallenged counts was at one time more limited. In the pre-guidelines era, we believed it was improper to resentence a defendant on the remaining counts after one count was set aside in a § 2255 proceeding. The thought was that by the time a § 2255 motion was filed and decided, the defendant's sentences on each count of conviction had become final and usually "only a specific sentence on a specific count [was] before the district court" in the § 2255 proceeding. United States v. Rosen, 764 F.2d 763, 766 (11th Cir. 1985). After the sentencing guidelines were promulgated in 1987, however, we changed course. We held that with guidelines sentences where one or more counts of conviction are set aside in a § 2255 proceeding, the district court has the

13

authority to resentence the defendant on the remaining counts of conviction, provided that those counts were "interdependent" with the set aside ones, resulting in what could be viewed as "an aggregate sentence." Mixon, 115 F.3d at 903 (quotation marks omitted); see also United States v. Oliver, 148 F.3d 1274, 1275 (11th Cir. 1998). "Aggregate sentence" apparently was collateral speak for "sentence package."

The interdependence requirement for resentencing after a conviction was vacated in a § 2255 proceeding quickly came to be seen as nothing more than was required for resentencing after a conviction was vacated on direct appeal. As long as the district court "viewed the [defendant's original sentence] as a 'package,'" the counts of conviction and the component sentences resulting from them are interdependent enough for the district court to revisit them after one of the components is set aside. United States v. Watkins, 147 F.3d 1294, 1297 (11th Cir. 1998). When the "sentencing package [becomes] 'unbundled,'" we have explained, the district court has the authority to "recalculate and reconsider [the defendant's] sentence for it to comport with the district court's original intentions at sentencing." Id. That is as true when the unbundling occurs in a § 2255 proceeding as it is when it happens on direct appeal. So the old distinction based on whether the sentence was set aside in a § 2255 proceeding or on direct appeal did not survive the change from wide open discretionary sentencing to guidelines

14

sentencing. See Mixon, 115 F.3d at 903 ("Under the sentencing package concept, when a defendant raises a sentencing issue he attacks the bottom line. That [the defendant's] case came before the district court pursuant to a 2255 petition, rather than a remand from us or by some other means, does not change that fact.") (quotation marks omitted).

We have included this discussion about unbundling in a § 2255 proceeding, even though the unbundling in this case occurred after a direct appeal, because Fowler relies on § 2255 unbundling decisions from a bygone era in his argument. Our point is that it would not matter if his Count 1 conviction had been set aside in a § 2255 proceeding instead of as a result of his direct appeal because in the present, post-guidelines era there is no difference. In any event, in this case the conviction was set aside in a direct appeal. When that has happened, we have always — pre-guidelines and post-guidelines — presumed that sentences on each count of a multi-count indictment are part of a package that may, without a case specific inquiry, be revisited to ensure that the overall sentence on the surviving counts is consistent with the district court's intentions, the guidelines, and the § 3553(a) factors. See Martinez, 606 F.3d at 1304; Stinson, 97 F.3d at 469; see also Pepper, 131 S.Ct. at 1251.

Even without that presumption and with a case specific inquiry, we would reach the same result in this case. First, although not required to do so, the district

court made clear at the resentencing that when sentencing Fowler the first time, it had viewed the sanctions it imposed on him as "a package sentence," and that it "would not have given someone ten years on a murder-with-a-firearm charge standing alone." Second, sentences that include a mandatory consecutive term of imprisonment, such as the consecutive ten-year sentence that Fowler received on Count 2, "are particularly well suited to [being] treated as a package" because they "are inherently interdependent." United States v. Townsend, 178 F.3d 558, 567–68 (D.C. Cir. 1999).[5] Once Fowler's conviction and life sentence on Count 1 were vacated, only a vestige of the original sentence remained — a "consecutive" ten-year term that was no longer consecutive to anything. It was left hanging.

As the architect of a sentence structure that has been partially dismantled by a conviction being vacated, the district court can redesign and rebuild it to achieve the original purpose and conform to code. The package should be repackaged to ensure that the punishment fits both the criminal and the crime.[6] See § 3553(a);

---

[5] For all of these reasons, the fact that Fowler's original counts of conviction were not grouped together under the sentencing guidelines does not negate the district court's authority to reconsider the overall sentencing scheme that it had crafted once Fowler's conviction on Count 1 was vacated. We have repeatedly permitted resentencing where a defendant's counts of conviction have not been grouped together under the sentencing guidelines, and we did so even before the guidelines' grouping rules came into existence. See Watkins, 147 F.3d at 1295–97; Mixon, 115 F.3d at 901–03; Stinson, 97 F.3d at 467–69; Lail, 814 F.2d at 1529–30; Rosen, 764 F.2d at 765–67.

[6] Because Fowler's conviction and sentence on Count 1 were vacated by the district court, this case does not implicate an appellate court's discretion to determine the appropriate scope of proceedings that are to be conducted on remand in a criminal case. See 28 U.S.C. § 2106 ("[A] court of appellate jurisdiction may . . . require such further proceedings to be had as

Martinez, 606 F.3d at 1304; Stinson, 97 F.3d at 469.  That is what the district court did in this case.

### III.

Fowler's fallback contention is that, even if the district court had the authority to resentence him on Count 2, the life sentence it imposed on that count violated his due process rights.  He relies on our pre-guidelines decision in United States v. Monaco, 702 F.2d 860 (11th Cir. 1983), asserting that it prohibited the district court from imposing a sentence in excess of the ten-year term it originally imposed on Count 2.  Fowler's reliance on that decision is misplaced for three reasons.  First, Monaco does not categorically prohibit a district court from imposing a longer sentence at resentencing.  Second, Monaco's pre-guidelines approach for gauging the severity of a new sentence relative to an old one — the aggregate remainder approach — is not binding in the post-guidelines era, which presents materially different circumstances than those involved in that case.  Finally, even if Monaco's pre-guidelines holding extended to post-guidelines sentencing, it does not affect the result in this case because the life sentence imposed by the district court on Count 2 is supported by non-vindictive reasons appearing in the record.  We address each reason in turn.

---

may be just under the circumstances."); Martinez, 606 F.3d at 1303 (explaining that § 2106 "unambiguously grants the circuit courts broad discretion to fashion an appropriate mandate on remand after the vacatur of a sentence," whether it be a "remand for resentencing de novo" or a mandate that "limit[s] the issues for review on remand").

17

A.

Our Monaco decision applied the constitutional rule that was first articulated in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072 (1969). See Monaco, 702 F.2d at 883–84. The Supreme Court held in Pearce that while "there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial" or upon resentencing, due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives." 395 U.S. at 723–25, 89 S.Ct. at 2080. To guard against the risk of vindictive resentencing, Pearce adopted a prophylactic rule under which a presumption of vindictiveness arises if two conditions are present: (1) the sentencing judge "imposes a more severe sentence" upon resentencing; and (2) no non-vindictive reasons for doing so "affirmatively appear" in the record.[7] Id. at 726, 89 S.Ct. at 2081; see also Alabama v. Smith, 490 U.S. 794, 798, 109 S.Ct. 2201, 2204 (1989). If those two conditions are met, "a presumption arises that [the] greater sentence has been imposed for a vindictive purpose — a presumption

---

[7] In the Pearce opinion, the Supreme Court stated that the reasons justifying an increased sentence "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. at 2081 (emphasis added). The Court, however, has retreated from that temporal restriction, explaining that "[t]his language . . . was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified," and a sentence increase may be justified by evidence bearing on an appropriate sentence, even if that evidence does not concern conduct of the defendant that occurred after the original sentence proceeding. Texas v. McCollough, 475 U.S. 134, 141–43, 106 S.Ct. 976, 980–81 (1986). The reformulated rule of Pearce is that an otherwise unexplained increase in a sentence raises "a presumption of vindictiveness, which may be overcome only by objective information . . . justifying the increased sentence." Id. at 142, 106 S.Ct. at 981 (quotation marks omitted).

that must be rebutted by objective information justifying the increased sentence." Smith, 490 U.S. at 798–99, 109 S.Ct. at 2204 (alteration and quotation marks omitted).

The Monaco decision did not, as Fowler suggests, alter the Pearce rule by categorically barring a district court from imposing a longer sentence upon resentencing. It actually reaffirmed the rule by holding that the reason the increase in the sentence in that case "violate[d] the Pearce rule" is that "the trial judge failed to state affirmatively the reasons for the increase." Monaco, 702 F.2d at 885. In this case, as we will explain later, the district court did affirmatively state the reasons for the increased sentence on Count 2. See infra Part III. C.

## B.

The only significant thing that Monaco added to Pearce was a particular method for determining whether a new sentence in a multi-count case is an increase over the old one; if it is not, there are no due process concerns and no possibility that Pearce applies. See Monaco, 702 F.2d at 885. The defendant in Monaco was convicted on three counts, for which he was sentenced to consecutive prison terms of two years, one year, and one year. Id. at 883. The district court later granted a new trial and, upon retrial, dismissed the third count due to insufficient evidence. Id. After the jury convicted the defendant on the two remaining counts, the court sentenced him to concurrent four-year terms of

19

imprisonment on each of those two counts, again for a total sentence of four years.
Id.

In deciding whether the defendant's second sentence was greater than his first one in Monaco, we adopted an aggregate remainder approach which disregards "that part of the original sentence attributable to [the vacated count]" and compares the old and new total sentences only on the surviving counts. Id. at 885; see also United States v. Campbell, 106 F.3d 64, 67–68 (5th Cir. 1997). Because the defendant's aggregate sentence on the two remaining counts had increased from three to four years, we concluded that his sentence had increased for purposes of Pearce even though his total sentence remained the same. Monaco, 702 F.2d at 885.

Under that aggregate remainder approach, Fowler's new sentence of life imprisonment in this case would be considered more severe than his original sentence of life plus ten years because his sentence on the only remaining count, the firearm charge, increased from ten years to life. That conclusion is counterintuitive, which may explain why most of our sister circuits have instead adopted an aggregate package approach. See Campbell, 106 F.3d at 67–68 (adopting the "aggregate package approach" followed by the First, Third, Fourth, Seventh, Ninth, and Tenth Circuits). That approach compares the total original sentence (in this case life plus ten years) to the total sentence after resentencing (in

20

this case life) to determine whether <u>Pearce</u> is even implicated (in this case it would not be).

While we are obligated to follow the holdings of an earlier decision, "[t]he holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision." <u>Anders v. Hometown Mortg. Servs., Inc.</u>, 346 F.3d 1024, 1031 (11th Cir. 2003) (quoting <u>United States v. Aguillard</u>, 217 F.3d 1319, 1321 (11th Cir. 2000)); <u>see also</u> <u>Watts v. BellSouth Telecomms., Inc.</u>, 316 F.3d 1203, 1207 (11th Cir. 2003) ("[J]udicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."). For that reason, although we must apply <u>Monaco</u>'s aggregate remainder approach "to facts and circumstances sufficiently similar to those under which it arose, we are not obligated to extend the decision to [materially] different situations." <u>Anders</u>, 346 F.3d at 1031; <u>see also</u> <u>Dantzler v. I.R.S.</u>, 183 F.3d 1247, 1251 (11th Cir. 1999) ("[T]here is a big difference between following a precedent where the prior-precedent rule demands it and extending a precedent."). Because <u>Monaco</u> arose and was decided before the sentencing guidelines existed, it could not, and did not purport to, decide what approach should be used to determine when the <u>Pearce</u> presumption applies to a new sentence imposed under the guidelines regime. And because the guidelines effected a sea change in the federal

21

sentencing landscape, the circumstances in which Monaco was decided and the circumstances of this case are materially different.

When Monaco was decided in 1983, district courts exercised "almost unfettered discretion to select prison sentences for federal offenders," subject to virtually no appellate review, so long as the sentences fit within the "customarily wide" statutory boundaries set by Congress. See Tapia v. United States, — U.S. —, 131 S.Ct. 2382, 2386–87 (2011) (quotation marks omitted); see also United States v. Irey, 612 F.3d 1160, 1180 (11th Cir. 2010) (en banc) (explaining that, before the federal sentencing guidelines, district courts "had unbridled discretion to arrive at any sentence they pleased" within the broad statutory boundaries and with "practically no appellate review of federal sentences"). In exercising that considerable discretion, a sentencing judge could "conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." United States v. Tucker, 404 U.S. 443, 446, 92 S.Ct. 589, 591 (1972). That was the lay of the land in sentencing during the pre-guidelines era.

The federal sentencing landscape was dramatically altered by the Sentencing Reform Act of 1984, which channeled and cabined the discretion of sentencing judges by establishing the sentencing guidelines (effective in November 1987) and by specifying factors that had to be considered when imposing sentence. See

Tapia, 131 S.Ct. at 2387–88; 18 U.S.C. § 3553; see also Irey, 612 F.3d at 1181 (explaining that the "primary purpose" of the Sentencing Reform Act "was to channel district courts' sentencing discretion and reduce disparity in sentencing"). Even under the current advisory guidelines system, modified as it was by the decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), district courts are required to correctly calculate the guidelines range, both initially and upon resentencing, and to use that range as "the starting point and the initial benchmark" for their sentencing decisions. Peugh v. United States, — U.S. —, 133 S.Ct. 2072, 2080 (2013) (quotation marks omitted). After calculating the guidelines range applicable to all counts, courts must then consider the factors set forth in § 3553(a) to determine whether to impose a sentence within or without the guidelines range. See id. Even at that sentencing step, the guidelines remain "the lodestone of sentencing" because a "district court contemplating a non-[g]uidelines sentence must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 2083–84 (quotation marks omitted). And if a court elects to impose a sentence based on a major variance from the guidelines range, the chances of reversal on appeal increase. See Irey, 612 F.3d at 1186–87. Unlike their pre-guidelines counterparts, post-guidelines sentences are subject to meaningful appellate review for

23

reasonableness.  See id. at 1180, 1184–93; Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007).

The sentencing guidelines and the § 3553 factors undermined a fundamental assumption implicit in Monaco's pre-guidelines worldview — that district courts have virtually unbridled discretion to select a prison term within the applicable statutory range.  At the time of Monaco, the guidelines were not the "benchmark" or "lodestone" of resentencing, a deviation from which had to be justified in light of the § 3553(a) factors.  See Peugh, 133 S.Ct. at 2083–84.  Monaco's pre-guidelines holding does not extend to the materially different circumstances presented by post-guidelines sentencing.  See Watkins, 147 F.3d at 1297 (rejecting the precedential value of a pre-guidelines case because it "did not contemplate" the "interdependence" of sentences on multiple counts under the guidelines); Oliver, 148 F.3d at 1275.

We decline to extend Monaco's aggregate remainder approach to package sentences imposed under the sentencing guidelines and the § 3553(a) factors.  The Supreme Court has emphasized that because "the evil the Pearce Court sought to prevent was . . . vindictiveness of a sentencing judge," not the "imposition of an increased sentence for some valid reason," the presumption of vindictiveness should not apply in circumstances where there is no "reasonable likelihood that the increase in sentence is the product of actual vindictiveness."  Smith, 490 U.S. at

24

799, 109 S.Ct. at 2204–05 (citation and quotation marks omitted).  In the pre-guidelines era, where sentencing judges wielded unfettered discretion to select prison terms within the broad statutory boundaries set by Congress, it may have been defensible to presume that a higher sentence at resentencing on a particular count represented a wholly personal decision by the sentencing judge and, thus, one that warranted a presumption of vindictiveness absent a non-vindictive explanation.  But that presumption is no longer defensible in the present federal sentencing regime.

Take the circumstances of this case.  Fowler's successful challenge to his conviction on Count 1 stripped away the life sentence that was the foundation of his original sentence, leaving only a consecutive term of ten years on Count 2.  At resentencing on Count 2 alone, Fowler's advisory guidelines sentence — the "benchmark" and "lodestone" for sentencing decisions in the guidelines era — was life imprisonment.  See Peugh, 133 S.Ct. at 2083–84.  The guidelines commentary, which is generally binding on courts, unequivocally states that "[i]n the case of premeditated killing," such as this one, a "life sentence is the appropriate sentence if a sentence of death is not imposed."[8]  U.S.S.G. § 2A1.1 cmt. 2(A); see also United States v. Wilks, 464 F.3d 1240, 1245 (11th Cir. 2006) ("Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless

---

[8] Fowler's sentencing guidelines range on the surviving firearm offense was calculated under U.S.S.G. § 2A1.1 because it involved the premeditated killing of Officer Horner.

25

they contradict the plain meaning of the text of the Guidelines.") (quotation marks omitted).  But if Monaco's aggregate remainder approach applied here, any sentence above ten years imprisonment on Count 2 would raise the specter of vindictive sentencing, even though a ten-year sentence for the murder of Officer Horner would involve such a major variance from the guidelines range that it would almost certainly be substantively unreasonable under the § 3553(a) factors. See Gall, 552 U.S. at 50, 128 S.Ct. at 597 (explaining that a major deviation from the guidelines requires a "justification [that] is sufficiently compelling to support the degree of the variance").  The Pearce presumption was not designed to apply under these circumstances, where the sentencing process dictated by the guidelines undercuts any "realistic motive for vindictive sentencing" and makes the possibility of such vindictiveness largely "speculative."  See McCullough, 475 U.S. at 139, 106 S.Ct. at 979.

In short, applying Monaco's aggregate remainder approach to package sentences under the current advisory guidelines regime makes no sense in light of Pearce's concern with sentencing motivated by actual vindictiveness, not with sentencing driven by some valid reason unconnected with a defendant's successful attack on one of his convictions.  In the guidelines era, whether a defendant's sentence has become "more severe" for purposes of invoking the Pearce rule should depend on whether his total punishment has increased upon resentencing,

not whether his punishment on a single surviving count of conviction has increased.  Only the aggregate package approach adequately "reflects the [current] realities faced by district court judges," who are tasked with fashioning sentences that comport with the sentencing guidelines and the § 3553(a) factors.  See Campbell, 106 F.3d at 68 (adopting the aggregate package approach in the post-guidelines era because that "approach best reflects the realities faced by district court judges who sentence a defendant on related counts of an indictment" and "best comports with [the] important goal" of ensuring that the sentence "fits the crime and the criminal").

Our conclusion that Monaco's aggregate remainder approach is not tenable in the guidelines era is consistent with our post-guidelines practices and decisions in this area.  Since the guidelines first became effective in 1987, we have on several occasions implicitly followed the aggregate package approach, comparing the total sentence imposed before and after resentencing to determine whether the presumption of vindictiveness is even applicable.  See Watkins, 147 F.3d at 1298 (finding no due process violation where the defendant's total "aggregate sentence of 132 months was not increased" upon resentencing); Mixon, 115 F.3d at 902, 904 (holding that due process concerns were not even implicated where the defendants' "overall prison term[s]" had been reduced, even though their sentences on the surviving counts of conviction had increased); see also Greenlaw v. United

27

States, 554 U.S. 237, 253–54, 128 S.Ct. 2559, 2569–70 (2008) (explaining that where a trial court, on remand, has "imposed a sentence on the remaining counts longer than the sentence originally imposed on those particular counts, but yielding an aggregate sentence no longer than the aggregate sentence initially imposed," the defendant "may gain nothing from his limited success on appeal, but he will also lose nothing, as he will serve no more time than the trial court originally ordered").

For these reasons, we adopt the aggregate package approach endorsed by the majority of our sister circuits, and contemplated by the Supreme Court, for determining whether a sentence imposed under the guidelines has become more severe for purposes of invoking the Pearce presumption.  Because Fowler's total aggregate sentence of life plus ten years did not increase upon resentencing, but was actually reduced to a term of life imprisonment, he cannot even begin to make out a claim of vindictive sentencing.  There is no presumption of it.

## C.

There is another reason why Fowler cannot prevail on his Pearce claim. Even if Monaco's aggregate remainder approach extended to post-guidelines sentencing, so that the first predicate for invoking the presumption of vindictiveness (a more severe sentence) did exist in this case, the second one does not.  The second predicate for the presumption is that "the reasons" for the increased sentence do not "affirmatively appear" in the record of the resentencing.

28

Pearce, 395 U.S. at 726, 89 S.Ct. at 2081; see also Smith, 490 U.S. at 798, 109 S.Ct. at 2204.  Here, it is clear from the record why the district court resentenced Fowler to life imprisonment on Count 2 — the guidelines range, as calculated in the PSR and by the court, recommended a life sentence and the § 3553 factors supported it.  See United States v. Eldick, 443 F.3d 783, 790 (11th Cir. 2006) (concluding that "Pearce ha[d] no application" where it was "clear from the record why the district court sentenced [the defendant] the way it did, and it was not to be vindictive").  Not only that, but the district court affirmatively explained that it was imposing a life sentence because it had considered the original sentence on Counts 1 and 2 to be package sentence, that it would never have imposed a ten-year sentence on Count 2 in the absence of a life sentence on Count 1, and that a life sentence was called for by the sentencing guidelines and the § 3553(a) factors, including the seriousness of Fowler's offense and his extensive criminal history. See McCullough, 475 U.S. at 140, 106 S.Ct. at 980 (refusing to apply the Pearce presumption to an increased sentence where, among other things, the sentencing judge provided "an on-the-record, wholly logical, nonvindictive reason for the sentence").

## IV.

Because the district court had the authority to resentence Fowler on Count 2 following the reversal of his conviction on Count 1, and because the life sentence

29

imposed on the sole surviving count was neither more severe than Fowler's total original sentence nor the product of vindictiveness, we affirm Fowler's life sentence.

**AFFIRMED.**