**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13187

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOHN EDWIN CORN, JR.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:13-cr-00100-TJC-MCR-1

_____

Before NEWSOM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Defendant appeals his de novo resentencing, asserting it was substantively unreasonable. His guideline sentence was 87 to 108 months' imprisonment, but the District Court granted an upward variance and sentenced him to 240 months. We recognize this is a substantial variance, but we hold that it was not an abuse of the District Court's discretion.

## I. Background

On May 14, 2014, John Edwin Corn, Jr. was convicted of one count of Robbery in violation of 18 U.S.C. § 1951(a) ("Hobbs Act Robbery"), two counts of attempted Hobbs Act Robbery, and one count of brandishing a firearm in furtherance of a crime of violence. Corn's presentence investigation report describes his criminal conduct:

- On October 6, 2012, Corn entered a Publix Super Market and demanded to speak with a manager. When the manager arrived, he told the manager to "get the money" and that he had a gun. Another employee retrieved money from another room and placed $7,224 in a bag. Corn left with the money.

- On October 13, 2012, Corn entered a different Publix Super Market and demanded to speak with a manager. He told the manager that his "wife [was] upset at the store." The manager apologized, but Corn then stated that he had a gun under his shirt and demanded

money. The manager grabbed a wine bottle and yelled at Corn to get out. Corn brandished a handgun and pointed it at the manager while fleeing the store.

- On October 21, 2012, Corn entered yet another Publix Super Market. He asked for a manager, and when she arrived, he said that he had a gun. The manager ran to the office and slammed the door, locking Corn out. Corn fled on foot.

A probation officer calculated Corn's guideline sentence. The officer arrived at a combined and adjusted offense level of twenty-six for the robbery and attempted robbery charges. She evaluated Corn's criminal history and arrived at a category of III. Corn had a litany of prior offenses beginning at age seventeen—including armed robbery, burglary, larceny of a motor vehicle, check forgery, aggravated battery, and escape while awaiting trial. Combining Corn's offense level and criminal history category, the officer calculated a guideline sentence ranging from 78 to 97 months' imprisonment for the robbery offenses. The firearm charge under 18 U.S.C. § 924(c) carried a mandatory minimum sentence of 84 months consecutive to other offenses, and the Guidelines recommended that same minimum.

Neither party objected to the Guidelines calculation, but the Government requested an upward departure or variance. Government argued, in part, that Corn's criminal background category of III understated his record. It explained that Corn's category was previously calculated at a VI (the highest available category) in

1991, but that his score lowered because he did not commit any crimes for twenty years while he was in prison. This effectively "wiped the slate clean" with respect to most of his earlier offenses.

Emphasizing the need to "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of Mr. Corn," the District Court granted the Government's motion for an upward variance. It sentenced Corn to 240 months' imprisonment for the robbery and attempted robbery convictions,[1] as well as 84 months for the firearm conviction.

In 2015, Corn filed a 28 U.S.C. § 2255 motion to vacate, correct, or set aside his sentence. Corn argued he had ineffective assistance of counsel and asserted various issues with sufficiency of evidence at trial. His motion was denied. In 2023, Corn filed for leave to file a second § 2255 motion, specifically challenging his § 924(c) firearm conviction. In light of new Supreme Court caselaw regarding § 924(c), this Court granted his motion.

Very briefly, § 924(c)(1) provides a term of imprisonment for "any person who, during and in relation to any *crime of violence* . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A) (emphasis added). The "crime of violence" that Corn's § 924(c) conviction was

---

[1] 240 months reflects the statutory maximum for each count of Hobbs Act Robbery, whether attempted or completed. *See* 18 U.S.C. § 1951(a). The District Court chose to not stack Corn's robbery convictions, and hence, stayed well under the statutory maximum.

brought under was one count of attempted Hobbs Act Robbery.[2] But in *United States v. Taylor*, the Supreme Court held that attempted Hobbs Act Robbery did not constitute a crime of violence under § 924(c).[3] 596 U.S. 824, 860, 142 S. Ct. 2015, 2025 (2022). Thus, Corn's conviction became unsound.

The District Court granted Corn's second § 2255 motion. Importantly, the District Court vacated his entire sentence—rather than just the 84 months under the § 924(c) count—and ordered a de novo resentencing. Once again, a probation officer calculated Corn's guideline sentence. The officer established a combined and adjusted offense level of twenty-eight and a criminal history category of II.[4] Using the Guidelines matrix, the officer established a guideline sentence ranging from 87 to 108 months' imprisonment.

---

[2] While Corn may or may not have had a gun during his October 6 completed robbery, his § 924(c) indictment only applied to the October 13 attempted robbery—likely because the firearm was actually brandished in that instance.

[3] To be more precise, *Taylor* held that attempted Hobbs Act Robbery did not qualify under the first prong of § 924(c)'s definition of a "crime of violence." 596 U.S. 824, 860, 142 S. Ct. 2015, 2025 (2022). The second prong, which served as a catchall for crimes that "involve a substantial risk that physical force against the person or property of another" was previously ruled unconstitutional in *United States v. Davis*. 588 U.S. 445, 470, 139 S. Ct. 2319, 2336 (2019).

[4] The difference between his 2014 criminal history category of III and his 2024 category of II is attributable to a change in the Guidelines. Corn's 2014 score was increased because the robberies occurred while Corn was on supervised release for a prior offense. In 2023, Amendment 821 to the Guidelines narrowed the applicability of the supervised release score upgrade. U.S. Sent'g Guidelines Manual app. C, amend. 821 (U.S. Sent'g Comm'n 2024).

As with Corn's original sentence, the Government requested an upward departure or variance from the guideline range. At resentencing, Corn made a lengthy statement where he apologized, acknowledged responsibility, pleaded for leniency, and explained his plan to reintegrate into society. The District Court considered Corn's thoughtful statement and noted his acceptance of responsibility. But the Court, emphasizing its need to deter crime and protect the public, reinstituted the same 240-month sentence imposed in 2014. Corn appeals his sentence, claiming it is substantively unreasonable.

## II. Standard of Review

We review the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States,* 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007).

## III. Discussion

### A.

A District Court's imposition of a sentence is governed by 18 U.S.C. § 3553 and the Federal Sentencing Guidelines promulgated by the United States Sentencing Commission. As codified, § 3553 made the Guidelines mandatory, subject only to "departures in specific, limited cases." *United States v. Booker*, 543 U.S. 220, 234, 125 S. Ct. 738, 750 (2005). But in *Booker*, the Supreme Court held that the mandatory guideline regime violated the Sixth Amendment. *Id*. at 233–34, 125 S. Ct. at 750. Its remedy was to make the

Guidelines advisory; the Court directed lower courts to "consider Guidelines ranges" but also permitted them to "tailor the sentence in light of other statutory concerns." *Id.* at 245, 125 S. Ct. at 757. These statutory concerns are found in § 3553(a), which directs a district court to impose a sentence that is "sufficient, but not greater than necessary" and enumerates specific purposes for a sentence to fulfill.

Post-*Booker* sentencing involves a three-step process. First, a probation officer inputs the defendant's adjusted offense level and criminal history category into the Guidelines Sentencing Table. *See* U.S. Sent'g Guidelines Manual § 5A (U.S. Sent'g Comm'n 2024). This identifies the defendant's guideline sentence range. Next, the court must decide whether any "departure" from the applicable range is warranted under Chapter 5K of the Guidelines.[5] *See* U.S. Sent'g Guidelines Manual § 5K (U.S. Sent'g Comm'n 2024). Finally, the court must impose a sentence that is consistent with the § 3553(a) factors, which may entail an upward or downward "variance" from the guideline range—even after considering any applicable departures. *See* 18 U.S.C. § 3553(a); *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).

The § 3553(a) factors are, in relevant part:

---

[5] For example, § 5K.2.5 allows a court to go above the guideline range where the offense "caused property damage or loss not taken into account within the guidelines." U.S. Sent'g Guidelines Manual § 5K.2.5 (U.S. Sent'g Comm'n 2024).

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a).

Our review of a sentence is limited. Sentences that fall outside of the Guidelines range do not receive a presumption of unreasonableness nor do they receive a heightened standard of review. *Gall*, 552 U.S. at 47–49, 128 S. Ct. at 595–96. Similarly, the percentage deviation from the Guidelines need not correlate with the strength of its justification. *Id.* "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 51, 128 S. Ct. at 597. Rather, we ask whether the sentence is "in the ballpark of permissible outcomes." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015).

We have previously held that a district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (quoting *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc)). These circumstances notwithstanding, a district court may weigh some § 3553(a) factors above others and we will not scrutinize weight allocation as long as the total sentence is reasonable. *Butler*, 39 F.4th at 1355.

## B.

Here, Corn argues that the District Court abused its discretion in imposing a twenty-year sentence. Neither party challenges the calculation of the Guidelines. Rather, Corn argues that his sentence, which represents a 122 percent upward variance from his Guidelines range, is substantively unreasonable. Corn correctly asserts that, as a general matter, "a major variance [requires] a more significant justification than a minor one." *United States v. Irey*, 612 F.3d 1160, 1196 (11th Cir. 2010). However, we hold that the District Court acted within its discretion and properly explained its rationale for the significant variance.

Explaining its upward variance, the District Court particularly relied on § 3553(a)(1), emphasizing Corn's criminal history. It explained how Corn "has had a very difficult time not committing crimes through the entirety of his life" and noted that the robberies at issue occurred when Corn was sixty-two years old. The Court

also explained that the Guidelines failed to "fully capture" Corn's "repeated conduct" because the Guidelines punish multiple robberies with only "a little bit of a bump upwards." To this point, Corn's guideline range was just 24 to 30 months higher than it would have been if he had committed one robbery instead of three. *See* U.S. Sent'g Guidelines Manual § 5A (U.S. Sent'g Comm'n 2024).

Adding weight to prior criminal conduct is expressly permitted by our precedent. A district court may "impose an upward variance if it concludes that the Guidelines range was insufficient in light of a defendant's criminal history." *Butler*, 39 F.4th at 1355. And a district court has "broad leeway" to decide how to weigh a defendant's prior offenses. *Rosales-Bruno*, 789 F.3d at 1261. Here, the District Court was within its discretion to give extra weight to Corn's criminal background. Corn's presentence investigation report listed fourteen convictions which were not factored into his criminal background score because they aged out. As the Court identified, Corn was once evaluated at a criminal history category of VI, but it came down dramatically after decades in prison where he was unable to commit additional crimes. Accordingly, we think the District Court reasonably concluded that the Guidelines inadequately reflected Corn's criminal history.

Corn argues that the Court failed to give adequate weight to his mitigating factors and post-sentencing rehabilitation. To his point, the Supreme Court has made clear that a district court "may consider evidence of a defendant's rehabilitation since his prior sentencing." *Pepper v. United States*, 562 U.S. 476, 490, 131 S. Ct. 1229,

1241 (2011). Corn asserted that he was "not the same person" that was sentenced in 2014 and that he had not had a disciplinary referral in the past five years. He accepted responsibility, which he had refused to do at his original sentencing. He explained that his health is in poor condition, noting the presence of a heart condition, arthritis, hypertension, Chronic Obstructive Pulmonary Disease, scoliosis, and an inguinal hernia. Last, Corn explained that he suffered trauma as a child while attending the Dozier School for Boys. He submitted to the Court an investigative article describing decades of abuse and insidious conduct perpetrated against children confined at Dozier. Corn explained that he was violently and repeatedly assaulted during his teenage years.

These are each meaningful mitigating factors, and the District Court would be wrong to ignore them. However, the District Court did afford them consideration and, unfortunately for Corn, did not find them sufficiently persuasive to outweigh the factors warranting an upward variance. The Court found that his health, though imperfect, is "probably typical of a 74-year-old person" and is not "a serious detriment to him continuing to . . . serve time in the Bureau of Prisons." The Court expressed no doubt that Corn's "experience at Dozier and his general upbringing . . . would have had a profound effect on how he interacts in the world and how he acts." But it also recognized that this "cannot provide a justification for the type of criminal conduct that is at play here."

The Court ultimately concluded that the § 3553(a)(2) purposes—namely, upholding the law, providing adequate deterrence

12                    Opinion of the Court                24-13187

and protecting the public—were too important in this instance to allow Corn an early release. The Court explained:

> You'd like to think that, of course, he's not going to commit any crimes if he was released. But there's just no way to know that based on his prior record, based on the fact that he committed these crimes when he was 62 years old.
>
> . . .
>
> But I cannot be assured, based on—based on everything in front of me, that Mr. Corn is unlikely to commit further crimes. I cannot be assured that the public does not need protection from him if he were to be released. I cannot be assured that specific deterrence is not an issue.

Corn argues that, however the lower court explained its rationale, it erred by not giving meaningful weight to the new Guidelines range and by assigning the same sentence despite new mitigating factors. Corn is correct that the Court did not make specific reference to his new Guidelines range when imposing his updated sentence. It did, though, incorporate by reference Corn's previous sentencing. And his 2014 sentencing range was actually calculated lower than his 2024 range, so we cannot say that this omission prejudiced Corn.

As to the fact that Corn received an identical sentence on the robbery convictions, we note that Corn's original sentence also included a seven-year conviction for his (now discarded) firearm conviction. Our Court has explained that a "criminal sentence in a

multi-count case is, by its nature, a 'package of sanctions that the district court utilizes to effectuate its sentencing intent consistent with the Sentencing Guidelines' and with the § 3553(a) factors." *United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996)). When a "conviction on one or more of the component counts is vacated," the sentencing court is "free to reconstruct the sentencing package . . . to ensure that the overall sentence" remains "proper in light of all the circumstances." *Id.*

Here, Corn's new sentence is effectively seven years shorter than his original sentence. The District Court had the authority to impose a higher sentence by stacking Corn's robbery convictions to more closely resemble the original twenty-seven-year sentence. Its decision not to recreate the original sentence, then, may be attributable to his mitigating factors and acceptance of responsibility. Regardless, the "decision about how much weight to assign a particular sentencing factor is 'committed to the sound discretion of the district court.'" *Rosales-Bruno*, 789 F.3d at 1254 (quoting *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008)).

### IV. Conclusion

For the foregoing reasons we hold that the District Court did not abuse its discretion.

**AFFIRMED.**